UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROGER CAPLINGER,                                                 Case No. 1:13-cv-347

      Plaintiff,                                                       Beckwith, J.
                                                                 Bowman, M.J.
  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Roger Caplinger filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Plaintiff presents two claims of error, both of which the Defendant disputes. Because it is supported by substantial evidence in the administrative record, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I. Summary of Administrative Record**

On December 27, 2009, Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of August 27, 2008, due to physical and mental impairments. (Tr. 176, 180-83). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On January 22, 2010, ALJ Lorenzo Level held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, Plaintiff's roommate and an impartial vocational expert. On July 28, 2010, ALJ Level denied Plaintiff's applications in a written decision. (Tr. 83-101). Plaintiff now seeks judicial review of the denial of his application for benefits.

1

Claimant was born July 13, 1965 and was 46 years old on the date of his hearing. He completed the tenth grade in special education classes and has no past relevant work. Plaintiff is a convicted child sex offender who served 15 years in prison for sexually abusing a child. He alleges disability based upon borderline intelligence, problems with his right leg, hip and knee. He also suffers from breathing problems, back problems, kidney stones, headaches and problems with his eyesight. (Tr. 110).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder; borderline intellectual functioning; mood disorder not otherwise specified (NOS); anxiety disorder NOS; dependent personality disorder; pedophilia; antisocial personality disorder; and asthma." (Tr. 85). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to work at all exertional levels with the following limitations:

> He is able to understand, remember and carry out simple instructions and perform simple tasks. He is able to have occasional interaction with the public, co-workers and supervisors. He cannot be subject to production rate paced work and must avoid concentrated exposure to dust, fumes, odors, gas or poor ventilation.

(Tr. 90). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, and RFC, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the national economy, including such jobs as janitor, dishwasher, and warehouse worker. (Tr. 101). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) inaccurately portraying Plaintiff's actual limitations in his hypothetical questions to the vocational expert; and 2) failing to find that Plaintiff's impairments met the Listing requirements for 12.05B and/or 12.05C. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for either DIB or SSI, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Hypothetical Question*

Plaintiff first argues that the ALJ's hypothetical question to the VE failed to include all of his limitations. Specifically, Plaintiff argues that the ALJ did not properly account for his limitations with regard to concentration, persistence, or pace, and social

4

functioning. Plaintiff further asserts that the ALJ erred by not including any exertional restrictions in his RFC finding. Plaintiff's assertions will be addressed in turn.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter,* 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Here, for the reasons outlined below, the ALJ properly determined that Plaintiff's physical impairments did not result in functional limitations. Furthermore, Plaintiff has not shown that he has mental limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding.

With respect to Plaintiff's mental impairments, the ALJ determined that Plaintiff had moderate impairments in concentration, persistence, or pace due. In so concluding, the ALJ relied on Plaintiff's own testimony as well as the findings of consultative examiner, Brian Griffiths, Psy. D., who examined Plaintiff in 2011. He noted that Plaintiff was able to follow the interview process during his exam and that he provided relevant, coherent answers to all questions. (Tr. 90, 1650). Dr. Griffith also opined that Plaintiff would have only mild difficulties with understanding and carrying out simple instructions, though he would be more limited with complex tasks. (Tr. 1653). In light of this evidence, the ALJ's RFC assessment found that Plaintiff is able to understand, remember and carry out simple instructions and perform simple tasks. In response to the ALJ's hypothetical with the same limitations, the vocational expert testified that individual with Plaintiff's characteristics and RFC would be able to perform the

requirements of representative jobs such as a janitor, dishwasher, and warehouse worker. (Tr. 100-01, 143-44).

Citing *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2009), Plaintiff asserts that the ALJ's hypothetical question failed to properly accommodate Plaintiff's moderate limitations due to his mental impairments. In *Ealy,* the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue,* No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D. Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.,* No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration, as is in *Ealy,* and Plaintiff offers no additional evidence or argument in support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

Next, Plaintiff contends that the ALJ improperly determined Plaintiff could have occasional contact with the public, supervisors, and co-workers. In this regard, Plaintiff alleges that his pedophilia limits with whom he could work. He further asserts that the record indicates that he cannot be with females or children due to impulse control. Contrary to Plaintiff's allegations, the ALJ properly determined that Plaintiff could have occasional contact with the public, supervisors, and co-workers. (Tr. 90).

As noted by the Commissioner, the ALJ considered the medical opinions of record indicating that Plaintiff had moderate limitations in his ability to interact with others, as well as evidence indicating that Plaintiff had friends, many of whom helped him out by paying him to do odd jobs. (Tr. 89, 120-21). The ALJ noted that Plaintiff stated that he gets along well with these individuals, and he currently lives a woman who was a friend of his mother. (Tr. 89). He identified himself as a caregiver of sorts for this woman. Further, the ALJ noted that Plaintiff was limited in his interactions with others because of the conditions of his parole. (Tr. 95). In light of this evidence the ALJ determined that "while [Plaintiff] demonstrated some difficulties with social functioning, he does maintain numerous strong relationships with individuals he trusts, therefore the undersigned finds that his limitations do not exceed the moderate level. As such, the ALJ reasonably limited Plaintiff to only occasional interaction with the public, co-workers, and supervisors. *See Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009) ("Discretion is vested in the ALJ to weigh all the evidence, and he did not abuse that discretion in this instance.").

Last, Plaintiff contends that the ALJ's RFC and hypothetical question to the vocational expert is not substantially supported because it failed to include any extertional limitations due to his low back pain. Plaintiff notes that Dr. Aina, a consultative examiner, found that Plaintiff had limited range of motion in the lumbar spine, and assigned lifting and carrying restrictions consistent with light work. The ALJ, however, found that the limitations assigned by Dr. Aina were "too great given the treatment history, imagining studies, clinical findings and daily acting of the claimant, including chores he performs." (Tr. 99). As such, the ALJ gave little weight to Dr. Aina's findings.

7

Furthermore, in determining that Plaintiff had no severe physical impairment, the ALJ noted that despite Plaintiff's claims of knee injury and resulting pain, he never received any treatment nor exhibited any symptoms consistent with his alleged injury. The ALJ further noted that there is no objective evidence establishes that Plaintiff suffers from a "bum knee." (Tr. 87). The ALJ also considered Plaintiff's complaints of back pain after his release from prison. In this regard, the ALJ noted Plaintiff received almost no treatment for his back pain and the objective tests were largely normal. As detailed by the Commissioner, in November 2010, while Plaintiff complained of sharp low back pain, his exam was normal with no difficulty with orthopedic maneuvers, and his gait, strength, and sensation were normal. (Tr. 1546-47). Additionally, lumbar spine x-rays showed some minor issues, however the findings were not considered significant and Plaintiff was permitted to resume all normal activity. (Tr. 1563, 1565).

Moreover, the ALJ noted that Plaintiff's daily activities failed to establish any functional limitations. Notably, Plaintiff's roommate testified that Plaintiff cares for her pets, which includes bathing, brushing and cleaning the kennels for her dogs. He also is responsible for mowing, planting and basic home maintenance.

In light of the foregoing, the undersigned findings that ALJ's RFC and hypothetical questions to the vocational expert accurately set forth Plaintiff's functional limitations based upon his severe impairments. As such, the ALJ's decision should be affirmed in this regard.

*2. Listing 12.05B and/or 12.05C*

Plaintiff further contends that the ALJ erred in finding that Plaintiff does not meet or equal Listing 12.05(B) or 12.05(C). Upon careful review and for the reasons that follow, the undersigned finds that the ALJ's decision is substantially supported.

*A. Listing 12.05*

Listing 12.05 provides as follows:

12.05 *Mental Retardation:* mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
B. A valid verbal, performance, or full scale IQ of 59 or less; OR
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function OR
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir.1987) (citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that his impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12.05. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria...." *Carmack v. Barnhart,*

9

No. 04–6152147 Fed.Appx. 557, *560 (6th Cir.2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

The diagnostic description of mental retardation is as follows:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM–IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.,* 240 F. App'x 692, 698 (6th Cir.2007) (citing *Heller v. Doe by Doe,* 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM–IV, p. 49.B

*B. Relevant Medical Evidence*

As noted by the ALJ, school records indicate intelligence testing in 1974, when Plaintiff was seven years old, yielded a full scale IQ score of 68.  Plaintiff was tested again in eighth grade, at which time he attained a verbal IQ of 59, a performance IQ of 77 and a full scale IQ of 67.  Based on these scores, Plaintiff was labeled "Educable Mentally Handicapped," and continued to qualify for continued special education

10

services. Plaintiff continued to attend school in special education classes and obtaining passing grades until he dropped out in the tenth grade.

Thereafter, as an adult, he was tested in 1994 and obtained IQ of 74, performance IQ of 93, and full scale IQ score of 79 in 1994 and obtained a full scale IQ score of 80 in 1996. (Tr. 349, 1500). The ALJ also noted that prison records indicated that Plaintiff's IQ indicated Borderline Intellectual Functioning in 1998, 2002, and 2004 (Tr. 89, 804, 812, 953). Finally, additional testing in 2011, yielded a full scale IQ of 74. (Tr. 1648).

Additionally, 3 months *after* the ALJ issued his decision in this matter; Plaintiff underwent a psychological examination and IQ test performed by Dr. Shelby on April 16, 2012. (Tr. 1730-32). Dr. Shelby found that he had a full scale IQ score of 54. (Tr. 1731).

### C. Step-three Analysis

In the present case, at step-three of the sequential analysis, the ALJ determined that Plaintiff's impairments do not meet or equal the requirements of any Listing. (Tr. 22). Specifically, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria of Listings 12.04, 12.05, or 12.06 and 12.08. With respect to Listing 12.05, the ALJ's decision states, in relevant part:

> These findings fail to establish the requisite showing of mental retardation reflecting sub average functioning before age 22. The ALJ further noted, that repeat assessments as an adult, after full development and by acceptable medical sources, show that the claimant's IQ more reasonably measures in the borderline to low average range. It is therefore not necessary to address the other subsections of Listing 12.05.

(Tr. 88).

Plaintiff argues that he meets listing 12.05B because he had a qualifying IQ score as evidenced by Dr. Shelby's report from 2012[1] and from testing when he was fourteen years old that showed a verbal IQ score of 59. Plaintiff further contends that he also meets the listing requirement for 12.05C based upon the 2011 scores because there is a five-point margin of error in IQ testing. Plaintiff's contentions lack merit.

As discussed above, Dr. Shelby's report issued after the ALJ's decision is not properly before the Court. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49. (6th Cir. 1996). Similarly, Plaintiff's IQ score from when he was 14 is no longer valid. The regulations provide that intelligence test scores must be sufficiently current for an accurate assessment of mental retardation, as test results generally stabilize by the age of 16. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D) (IQ scores obtained between ages 7 and 16 are valid for only two years when the score is 40 or above). *See also Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125–26 (6th Cir.2003). Because Plaintiff's IQ test scores were obtained when he 14 years old and his test results all exceeded the forty point standard, they would be considered current for only two years. *Id.*

---

[1] As noted above, this evidence was obtained after the ALJ's decision and purportedly presented to the Appeals Council. As such, this evidence may only be considered in the context of a sentence six remand. Pursuant to Sentence Six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material," meaning there is "a reasonable probability that the Secretary would have reached a difference disposition." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir.2001) (citations omitted); *see also Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006). The plaintiff must also establish good cause for his failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir.2007); *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir.1989). " 'Good cause' is not established solely because the new evidence was not generated until after the ALJ's decision. Here, Plaintiff has failed to establish that this evidence is new and/or material. In fact, Plaintiff's reply brief expressly states that such evidence is not "new". Accordingly, to the extent that Plaintiff's statement of errors can be construed as including a motion for a sentence six remand, such a motion should be denied.

Next, Plaintiff argues that the ALJ improperly relied on IQ testing from 2011. Notably, in 2011, Plaintiff obtained the following scores on Wechsler Adult Intelligence Scale: Verbal Comprehension score of 85, Perceptual Reasoning score of 81, Working Memory Index score of 69, Processing Speed Index score of 76, and Full Scale score of 74. (Tr. 1678). In light of these scores, Plaintiff asserts the ALJ improperly relied on the full scale score of 74, because there was more than a five point margin between the scores. *See Diagnostic and Statistical Manual of Mental Disorders* 39, 40 (4th ed. 1994) ("[T]here is a measurement error of approximately 5 points in assessing IQ, although this may vary from instrument to instrument (e.g., a Wechsler [WAIS] IQ of 70 is considered to represent a range of 65–75). Thus, it is possible to diagnose Mental Retardation in individuals with IQs between 70 and 75 who exhibit significant deficits in adaptive behavior. Conversely, Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if here are no significant deficits or impairments in adaptive functioning.").

Here, as noted by the Commissioner, the doctor who conducted the IQ testing failed to diagnose Plaintiff with mental retardation or in any way indicate that he did not believe that the IQ score of 74 was entirely accurate. (Tr. 1643-51). In fact, the doctor noted that Plaintiff's "full scale IQ [was] somewhat lower than would be expected based on his clinical presentation." (Tr. 1649).

More importantly, even assuming Plaintiff's childhood IQ score is a valid qualifying score, an IQ score standing alone, is insufficient to meet the Listing requirements of 12.05(B) or 12.05(C). As noted above, Plaintiff must first demonstrate that his impairment(s) satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection B or C of 12.05. In this case,

there is no evidence in the record that he has been diagnosed with mental retardation, nor evidence that Plaintiff suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001).

In sum, the record does not contain valid IQ scores in the requisite range, no medical source has diagnosed Plaintiff with mental retardation, and Plaintiff has not submitted sufficient evidence pertaining to his lack of adaptive functioning prior to the age of 22 as required to satisfy Listing 12.05(B) or 12.05(C). Because it is his burden, at step three, to show that a listing can be met or equaled, Plaintiff's assignment of error should be overruled.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                           */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROGER CAPLINGER,　　　　　　　　　　　　　　Case No. 1:13-cv-347

    Plaintiff,　　　　　　　　　　　　　　　　　　　Beckwith, J.
　　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
  v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).